hYELVERTON, Judge.
On October 24, 1995, the defendant was charged by bill of information with two counts of theft of a vehicle valued in excess of $500.00, violations of La.R.S. 14:67. The defendant pled not guilty to both charges. A jury found defendant guilty on both counts. On November 26, 1996, the defendant was sentenced as a habitual offender, third offense, to ten years at hard labor on each count, to run consecutive to any previously imposed sentence. The defendant now appeals his conviction and sentence, alleging 21 assignments of error.[1]

\2FACTS:

On March 5, 1995, the defendant, along with two codefendants, took a 1985 Chevrolet Silverado pickup truck valued in excess of $500.00, without the consent of the owner, Oscar Laeour. On February 27, 1995, the defendant, along with at least one other co-defendant, took a 1984 Buick automobile valued in excess of $500.00, without the consent of its owners, Laurence and Carol Adams.

ASSIGNMENT OF ERROR NO. 1:

By this assignment, the defendant claims the trial court erred in overruling the defendant’s objections to the State’s use of leading questions when examining eighty-year-old Oscar Laeour about a copy of the bill of sale when he bought his truck. In State v. Quincy, 363 So.2d 647, 649 (La.1978), the supreme court stated as to a leading question that “[wjhile counsel should not be allowed to mold the testimony of a witness, a verdict should be disturbed only when there is a clear abuse calculated to prejudice the right of the accused.” The question in the present ease was not a clear abuse calculated to prejudice the defendant’s rights. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2:

By' this assignment, the defendant claims the trial court erred in overruling this objection to the State’s introduction of S-l on the ground that no proper foundation was laid as to the taking of the photograph. Mr. Laeour identified S-l as a photo of his Sil-verado pickup truck. Mr. Laeour knew the photograph was taken after his truck was stolen but did not know where it was taken. “A proper foundation | ¡¡for admission in evidence of a photograph is laid when witnesses, *869 having personal knowledge of the item or incident depicted by the photograph, identify it.” State v. Leggett, 363 So.2d 434, 439 (La.1978).
This assignment has no merit.

ASSIGNMENTS OF ERROR NOS. 3 & 4:

The defendant claims the State failed to introduce sufficient evidence to support the verdict since no evidence' was introduced that the co-owners of the vehicles (the husband and wife of community property) both did not consent to the taking of the vehicles. The State was not required to elicit testimony from both owners as to their lack of consent to the taking. See State v. McClanahan, 262 La. 138, 262 So.2d 499 (1972). The defendant concedes that the State did offer proof, for each item taken, that at least one owner did not give consent. The defendant cites no cases requiring all owners to testify as to their lack of consent. The circumstances pointed conclusively to the fact that the taking was felonious and that neither owner consented. The effect of any other standard would have been cumulative testimony at trial.
This assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 5, 6, & 7:

By these assignments, the defendant claims the State faded to prove that the value of each of the vehicles taken was in excess of $500.00. Additionally, the defendant claims the trial court erred in overruling his objection to the State’s ^questions to its expert concerning the values of hypothetical automobiles not a subject of the case.
Oscar Lacour, the owner of the 1985 Chevrolet Silverado truck at issue in count one, testified that he purchased the truck around 1994 for $3328.98. According to Mr. Lacour, an insurance claim was filed for the loss he suffered from the taking of the truck, for which he recovered $4200.00. Buddy Ry-land, accepted as an expert in the value of used automobiles, was asked the following question by the State:
Mr. Ryland, I’m going to ask you, if you would, to take these facts and tell me specifically in 1995, February of 1995, and March of 1995, would you have an opinion as to the value of a 1985 Chevrolet Silvera-do pickup truck which at the time was ... at one year prior to 1995, a year and a half, 1993, had been purchased for thirty-thee hundred dollars retail, and was in good running condition, could you give me an estimate or an approximation of what the value of that truck would be, sir?
The defense objected to the hypothetical nature of that question, and the trial court overruled his objection. The State then asked Mr. Ryland if such a pickup truck would have a value in excess of $500.00. Mr. Ryland replied, ‘Tes, sir, I would think it would.” Mr. Ryland explained further that if a 1985 truck is taken care of, and it’s clean, it should not depreciate more than $500.00 in a year. According to Mr. Ryland, most any car that is running is worth more than $500.00.
As for the 1984 Buick owned by Laurence and Carol Adams, Mrs. Adams testified she and her husband had owned the car for approximately ten years and had paid $5,000.00 for it. She stated the car had over one hundred thousand miles but was in good running condition in February 1995 and had two new tires on it. At the time |git was stolen, the car was parked out front for sale, with the sale price being $1500.00. According to Mrs. Adams, the least she would have sold the ear for was $1000.00. When asked if, in 1995, a 1984 Buick automobile with approximately one hundred thousand miles, in good running condition, and clean, would sell for over $500.00, Mr. Ryland responded, ‘Tes, sir, I would think it would.”
On cross-examination, Mr. Ryland stated his estimation might change depending on the type of maintenance applied to the automobiles. Mr. Ryland had not examined either one of the automobiles in question. However, he repeated, “But I still maintain that anything that runs is worth over five hundred dollars.”
In State v. Dilworth, 358 So.2d 1254, 1256-1257 (La.1978), the court stated the following concerning evidence sufficient to prove value:
In State v. McCray, La., 305 So.2d 433 (1974), the court stated:
*870 “Unless it is shown the owner lacks knowledge of the value of a movable [furniture], his testimony as to value is generally admissible, with its weight being left to the jury. 3 Wigmore on Evidence, Section 716 (Chadbourn ed., 1970)-.”
As expressed in 3 Wigmore on Evidence, Section 716 (Chadbourn ed., 1970), the rule concerning the ability of the owner to place a value upon his movable property is:
“The owner of an article, whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth; the weight of his testimony (which often would be trifling) may be left to the jury; and courts have usually made no objections to this policy.
“However, where it appears (either expressly or by reasonable inference) that the owner in fact lacks knowledge of the particular value at issue, his opinion may be ruled inadmissible.”
... It is not necessary that an owner be qualified as an expert in order to testify as to the value of the thing owned Igby him. Here the owner was not shown to lack knowledge of the value of the thing stolen. Thus, the owners’ testimony as to the value of the fence was properly admitted over his objection that they were not experts. State v. Curtis, La., 319 So.2d 434 (1975); State v. McCray, supra.
In the instant case, the trial court sustained the defense’s objection to Mr. Laeour and Mrs. Adams giving their opinion as to the worth of their automobiles. Considering the court’s holding in Dilworth, the disallowance of such testimony may not have been correct. Neither witness in the instant case testified that they lacked knowledge as to the value of their vehicles. Even so, the evidence that was admitted was sufficient to prove the value of the vehicles.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 8:

By this assignment, the defendant claims the trial court erred in overruling his objection to the State’s closing argument, which went outside the scope of the testimony and evidence ■ presented. La.Code Crim.P. art. 774 provides in part for the scope of closing argument as follows: “The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.”
During its closing argument, the prosecution stated the following:
You had the testimony of Mr. Jessie Young who said he was present. Jessie Young testified that he and Christopher Gains and Durria McCoy and the testimony was the same by Durria McCoy and was the same by Christopher Gains that they went from Morrow, Louisiana, to Mr. Lacour’s, that when they got there that man sitting right over there |7was the brains of the operation, the leader, that man right over there told them to....
We find this argument was a reasonable conclusion from the evidence introduced at trial. Jessie Young testified that the defendant was the one who cranked Mr. Lacour’s truck and drove it away. Young also testified that the defendant started Mrs. Adams’ Buick and drove it away. Christopher Gains testified that the defendant was the one who started Mr. Lacour’s truck and drove it away. Although Gains was not involved in the actual taking of Mrs. Adams’ Buick, he helped take the seats out of the car after it was taken. According to Gains, the defendant wanted the seats for his car. On cross-examination, Gains testified he had originally signed an affidavit stating the defendant was not involved in the thefts. .On redirect, Gains explained that it was the defendant’s idea to draw up the affidavit. Gains testified that he had received threats from the defendant. The State’s argument that the defendant was the ringleader was a reasonable conclusion from the above evidence.
This assignment has no merit.

ASSIGNMENT OF ERROR NO. 9:

By this assignment, the defendant claims the trial court erred in overruling his objection to the State’s reference in its closing argument to the fact that the defendant changed an affidavit. During its closing argument, the State argued the following:
*871 And you know that whole story about the affidavit, I hope you were really observant in court and saw who thought the affidavit was really important. It was Mr. Kennerson who thought the affidavit was really important and Mr. Gains testified that that was Mr. Kennerson’s idea obviously, look, |8I wasn’t involved. And I think that Mr. Gains explained to you that what he saw on the pages had been changed and it was changed by Mr. Ken-nerson. He testified and you have to read this ...
Based on our reading of the record, there was evidence based on which the jury could have reasonably concluded that Kennerson changed the affidavit.
This assignment has no merit.

ASSIGNMENTS OF ERROR NOS. 10 & 11:

These assignments have already been addressed in our discussion of Assignments of Error Nos. 5-7 and Assignment of Error No. 4, and for those reasons they have no merit.

ASSIGNMENTS OF ERROR NOS. 12-14:

The defendant expressly abandoned these assignments.
ASSIGNMENTS OF ERROR NOS. 15 — 17:
By these assignments, the defendant claims certain errors occurred during his habitual offender adjudication, i.e., certain documents were erroneously admitted (Assignment of Error No. 15); the alleged prior convictions were not proven to be felonies (Assignment of Error No. 16); and because of the above errors, the trial court erred in finding the defendant to be a third felony offender (Assignment of Error No. 17). These issues have already been resolved by this court in State v. Kennerson, 96-1518 (La.App. 3 Cir. 5/7/97); 695 So.2d 1367. In that opinion, this court concluded that the trial court erred in adjudicating the defendant a third felony offender. In that Lease, the defendant’s habitual offender hearing was held on July 9, 1996. In the present case, the defendant’s habitual offender hearing was held on November 26, 1996, but the State relied on the same evidence used at the July 9, 1996 hearing. In fact, the evidence presented at the July 9, 1996 hearing was introduced by reference at the November 26 hearing. Thus, we will adopt the same conclusions reached by this court in the May 7, 1997 Kennerson decision. For the same reasons given in that decision, we conclude that the defendant’s adjudication and sentence as a third offender should be reversed and vacated, and the case remanded for proper proceedings. Upon remand, the State will have the option of attempting to prove the defendant is a third felony offender. Id., at 19; 695 So.2d at 1379.[2]

ASSIGNMENTS OF ERROR NOS. 18 & 20:

These assignments deal with other aspects of the sentencing as a third time felony offender. Since we have decided to reverse that adjudication, it is not necessary to discuss these assignments.
However, we note that, as found in the earlier Kennerson decision, offenses which arise out of separate criminal episodes can each be enhanced even though the convictions for the offenses were entered on the same date. Kennerson, 96—1518 pp. 19-20. “[A] defendant cannot be sentenced as a multiple offender on multiple counts where the convictions on more than one count were entered on the same day and the offenses arose out of a single criminal episode.” Id., 695 So.2d at 1380. As stated in the bill of information in the present case, the two counts of theft at issue in the present case were committed on two separate dates. Count one was committed on March 5, 1995, and count two was committed on February *872 27,1995. Thus, the trial court could properly enhance both offenses in the present case.

ASSIGNMENTS OF ERROR NOS. 19 & 21:

By these assignments, the defendant claims the trial court erred in imposing an excessive sentence and in denying the defendant’s Motion to Reconsider Sentence on that ground. A discussion of these assignments of error is rendered unnecessary by our decision to vacate the defendant’s adjudication and sentence as a habitual offender and remand for further proceedings.

JUDGMENT

The defendant’s convictions are affirmed.
' The defendant’s adjudication and sentence as a third habitual offender is reversed and vacated. The case is remanded to the trial court for further proceedings consistent with this opinion.
Upon remand, the State shall have the option of attempting to prove the defendant is a third habitual offender.
InOn resentencing, the sentencing court is instructed to give the defendant credit for time served in conformity with La.Code Crim.P. art. 880.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.

. Presently before this court is another appeal by the defendant from convictions involving several counts of theft and simple burglary. (State v. Kennerson, 97-391 (La.App. 3 Cir. 10/8/97); 702 So.2d 860.) That appeal is related to the present case since the offenses involved in both appeals were enhanced at the same habitual offender hearing.

. When concluding the assignment of error involving this issue, this court in Kennerson stated that the defendant, at most, was proven to be a second habitual offender and should be resen-tenced as such. The court then found the State would have the option of once again attempting to prove that the defendant is a third felony offender, as double jeopardy does not apply to habitual offender adjudications. However, in its conclusion of the entire opinion, the court remanded to the trial court for the defendant to be resentenced as a second felony offender "and in a manner not inconsistent with this opinion.” Kennerson, 695 So.2d at 1384. Since double jeopardy has not attached, we will remand, giving the State the option of proving the defendant a third offender.